## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM BALLARD, | )    Case No. |
|            Plaintiff, | ) |
| | ) |
|       v. | )    **COMPLAINT FOR** |
| | )    **VIOLATIONS OF THE** |
| NEWMONT CORPORATION, PATRICK G. | )    **FEDERAL SECURITIES LAWS** |
| AWUAH JR., GREGORY H. BOYCE, BRUCE | ) |
| R. BROOK, MAURA CLARK, EMMA | )    JURY TRIAL DEMANDED |
| FITZGERALD, MARY LASCHINGER, JOSÉ | ) |
| MANUEL MADERO, RENÉ MÉDORI, JANE | ) |
| NELSON, TOM PALMER, JULIO M. | ) |
| QUINTANA, and SUSAN N. STORY, | ) |
| | ) |
|            Defendants. | ) |

Plaintiff William Ballard ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

### NATURE OF THE ACTION

1.      Plaintiff brings this action against Newmont Corporation ("Newmont" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed combination of the Company and Newcrest Mining Limited ("Newcrest").[1]

---

[1] This proposed business combination will be referred to herein as the "Proposed Transaction."

2.      On May 15, 2023, Newmont, Newcrest, and Newmont's wholly owned subsidiary, Newmont Overseas Holdings Pty Ltd ("Newmont Sub"), entered into a scheme implementation deed, as amended by a letter deed, dated September 4, 2023 (the "Transaction Agreement"). The Transaction Agreement provides that all Newcrest ordinary shares will be transferred to Newmont Sub and each holder of a Newcrest ordinary share will receive: (a) 0.400 shares of Newmont common stock, par value $1.60 per share; (b) 0.400 CHESS Depositary Interests, each one representing a unit of beneficial ownership in Newmont common stock; or (c) 0.400 PETS Depositary Interests, each one representing a unit of beneficial ownership in Newmont common stock[2]. The Transaction Agreement further requires the Company to issue additional shares of Newmont common stock (the "Share Issuance").[3]

3.      The Company's corporate directors subsequently authorized the September 5, 2023, filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that

---

[2] Newmont stockholders will own approximately thirty-one percent of the combined company upon consummation of the Proposed Transaction.

[3] The Company must obtain stockholder approval of the Share Issuance as New York Stock Exchange ("NYSE") listing rules require stockholder approval before a member company issues twenty percent or more of its outstanding common stock and before issuing securities that will result in a "change of control" of the company.

they can properly exercise their corporate suffrage rights, among other things.[4]

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Share Issuance and Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Share Issuance is completed and/or the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, the owner of Newmont common stock.

---

[4] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for October 10, 2023.

10.     Defendant Newmont is a Delaware corporation with its principal executive offices located at 6900 E. Layton Avenue, Suite 700, Denver, Colorado 80237.  Newmont's shares trade on the NYSE under the ticker symbol "NEM."  Incorporated in 1921, Newmont is primarily a gold producer with significant operations and/or assets in the United States, Canada, Mexico, Dominican Republic, Peru, Suriname, Argentina, Chile, Australia, and Ghana.  As of December 31, 2022, Newmont had attributable proven and probable gold reserves of 96.1 million ounces, attributable measured and indicated gold resources of 75.3 million ounces, attributable inferred gold resources of 36.1 million ounces, and an aggregate land position of approximately 23,700 square miles.  Newmont is also engaged in the production of copper, silver, lead and zinc.

11.     Defendant Patrick G. Awuah Jr. is and has been a director of the Company at all times relevant hereto.

12.     Defendant Gregory H. Boyce is and has been Chair of the Board and a director of the Company at all times relevant hereto.

13.     Defendant Bruce R. Brook is and has been a director of the Company at all times relevant hereto.

14.     Defendant Maura Clark is and has been a director of the Company at all times relevant hereto.

15.     Defendant Emma FitzGerald is and has been a director of the Company at all times relevant hereto.

16.     Defendant Mary Laschinger is and has been a director of the Company at all times relevant hereto.

17.     Defendant José Manuel Madero is and has been a director of the Company at all times relevant hereto.

18.     Defendant René Médori is and has been a director of the Company at all times relevant hereto.

19.     Defendant Jane Nelson is and has been a director of the Company at all times relevant hereto.

20.     Defendant Tom Palmer is and has been President, Chief Executive Officer and a director of the Company at all times relevant hereto.

21.     Defendant Julio M. Quintana is and has been a director of the Company at all times relevant hereto.

22.     Defendant Susan N. Story is and has been a director of the Company at all times relevant hereto.

23.     Defendants identified in paragraphs 11-22 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

24.     On May 24, 2023, the Company announced in relevant part:

DENVER--(BUSINESS WIRE)-- Newmont Corporation (NYSE: NEM, TSX: NGT) today announced that following completion of due diligence it has entered into a binding Scheme Implementation Deed ("SID") under which Newmont will acquire 100 percent of the issued share capital in Newcrest by way of an Australian court-approved Scheme of Arrangement (the "Scheme" or the "Transaction").

"The combination of Newmont and Newcrest represents an exceptional value proposition for shareholders and other stakeholders.  It creates an industry-leading portfolio with a multi-decade gold and copper production profile in the world's most favorable mining jurisdictions," said Tom Palmer, President and

CEO of Newmont.  "Following a robust due diligence process, we have identified a number of opportunities to unlock substantial value and will apply our experience and expertise to Newcrest's complementary and exceptional portfolio of long-life, low-cost gold and copper assets.  Leveraging our experience from the acquisition of Goldcorp four years ago, we are positioned to deliver an estimated $500 million in annual synergies and an estimated $2 billion in incremental cash flow from portfolio optimization opportunities, both part of our strategy to maximize value for shareholders and other stakeholders."

Mr. Palmer continued: "This transaction also increases Newmont's annual copper production – a metal vital for the new energy economy – and adds nearly 50 billion pounds of copper reserves and resources from Newcrest to our robust and balanced portfolio7.  We intend to quickly realize these opportunities to create superior value for our shareholders, workforce, host communities and governments."

Newcrest's Chairman, Peter Tomsett, added: "This transaction combines two of the world's leading gold producers, bringing forward significant value to Newcrest shareholders through the recognition of our outstanding growth pipeline.  In addition to the ongoing benefits of merging these premier portfolios, the combined group will set a new benchmark in gold production while benefitting from a material and growing exposure to copper and a market leading position in safety and sustainability.  The Newcrest Board is unanimously recommending the proposal.  We are very proud of the entire Newcrest team for building a world class metals business, which will form a key part of the combined group.  We believe our shareholders and other stakeholders can look forward to an exciting and prosperous future."

\* \* \*

**TRANSACTION SUMMARY AND CLOSE TIMELINE**

- Under the terms of the Scheme, Newmont will acquire all outstanding Newcrest shares and Newcrest shareholders will receive 0.400 Newmont shares (or 0.400 Newmont CDIs) for each Newcrest share held

- Newcrest will also fund and pay to its shareholders a franked special dividend of up to USD$1.10 per Newcrest share, conditional on the Scheme becoming effective

- Under the terms of the Scheme, and based on current market prices, the implied equity value of Newcrest is A$26.2 billion, including the dividend, with an enterprise value of A$28.8 billion

- Upon implementation of the Scheme, Newmont and Newcrest shareholders will own approximately 69 percent and 31 percent of the combined entity, respectively

- The Scheme is subject to customary conditions including:

  o Shareholder approvals from both companies

    ▪ Newcrest: more than 50 percent of shareholders voting and at least 75 percent of votes cast

    ▪ Newmont: more than 50 percent of votes cast

  o The Independent Expert concluding that the Scheme is in the best interests of Newcrest shareholders

  o Relevant regulatory approvals

  o No material adverse event or prescribed occurrences in respect of either company

- Newcrest and Newmont are each subject to customary exclusivity restrictions, including no-shop, no-talk, and no diligence restrictions, subject to certain customary exceptions

- The SID contemplates a break/termination fee (payable by Newcrest) and a reverse break/termination fee (payable by Newmont) in certain circumstances, with the quantum of each determined by reference to 1 percent of the equity value of the corresponding party (with a discounted amount of the reverse break fee payable, only to reimburse Newcrest for its third party costs, if Newmont stockholder approval is not ultimately obtained)

- Newmont intends to apply for a foreign exempt listing and establish CDIs on the ASX with respect to Newmont shares issued to Newcrest shareholders

- The Transaction is expected to close in the fourth quarter of 2023

**GOVERNANCE**

Gregory Boyce will continue as Chair of Newmont's Board of Directors ("Board") and the Board will select two directors from Newcrest to join the Newmont Board. Tom Palmer will continue as President and Chief Executive Officer of Newmont and will lead the combined company with a focus on safely and responsibly leading the combined workforce, integrating the acquired assets and delivering on shareholder commitments.

* * *

**ADVISORS AND COUNSEL**

In connection with the Transaction, Newmont has engaged BofA Securities, Centerview Partners LLC, Lazard and BMO Capital Markets as its financial advisers, and King & Wood Mallesons and White & Case LLP as its legal advisers.  Mackenzie Partners, Inc. will act as proxy solicitation agent.

**The Materially Incomplete and Misleading Proxy Statement**

25.     The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on September 5, 2023  The Proxy Statement, which recommends that Newmont stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) Newmont's, Newcrest's and the combined company's financial projections; and (b) the financial analyses that support the fairness opinions provided by the Company's financial advisors, BofA Securities, Inc. ("BofA Securities"), Centerview Partners LLC ("Centerview") and Lazard Frères & Co. LLC ("Lazard").

***Material Misrepresentations and/or Omissions Concerning the Financial Forecasts for Newmont, Newcrest, and the Combined Company***

26.     The Proxy Statement fails to disclose material information concerning the Company's financial forecasts, including the unlevered free cash flows for Newcrest for the years 2028 through 2086.  Similarly, the Proxy Statement fails to disclose the financial forecasts for Newcrest prepared by Newcrest management that were relied upon by each of BofA Securities, Centerview and Lazard for their respective fairness opinions.[5]

27.     The Proxy Statement also fails to disclose the forecasted unlevered free cash

_____

[5] *See* Proxy Statement at 95, 101, 111.

8

flows for Newmont for the years 2028 through 2080.

28.     The Proxy Statement also fails to disclose the estimates of certain resources for both Newmont and Newcrest not accounted for in the financial forecasts, which were relied upon by the Company's financial advisors in connection with their respective fairness opinions.[6]

29.     With respect to the combined company, the Proxy Statement fails to disclose the "cost savings and cash flow enhancements that Newmont was forecasted to generate during fiscal years 2023 through 2080 based on the Synergies" that BofA Securities utilized for its *Synergies Discounted Cash Flow Analysis*.[7]

### Material Misrepresentations and/or Omissions Concerning the Financial Analyses prepared by BofA Securities, Centerview and Lazard

30.     The Proxy Statement fails to disclose material information concerning the financial analyses prepared by BofA Securities, Centerview, and Lazard.

31.     With respect to the *Newcrest Standalone Discounted Cash Flow Analysis* prepared by BofA Securities, the Proxy Statement fails to disclose Newcrest's terminal values and the adjustments made for certain balance sheet items, including cash, debt, equity investments, and the NMR estimate for Newcrest.

32.     With respect to the *Newmont Standalone Discounted Cash Flow Analysis* performed by BofA Securities, the Proxy Statement fails to disclose Newmont's terminal values

---

[6] *See* Proxy Statement at

[7] *Id*. at 98.  The Proxy Statement also fails to disclose the line items underlying forecasted EBITDA and unlevered free cash flow with respect to the Newmont projections, the adjusted Newcrest projections, and the combined company projections.

and the adjustments made for certain balance sheet items, including cash, debt, equity investments, and the NMR estimate for Newmont.

33.     With respect to the *Pro Forma Accretion/Dilution Analysis* performed by BofA Securities, the Proxy Statement fails to disclose Newmont's calendar years 2024 through 2025 estimated operating cash flow per share utilized in the analysis.

34.     With respect to the analysis of analyst estimates of net asset value per share of Newmont and per ordinary share of Newcrest performed by BofA Securities, the Proxy Statement fails to disclose the individual net asset values per share and per ordinary share observed, as well as their respective sources.

35.     With respect to the *Newcrest Life-of-Mine Discounted Cash Flow Analysis* performed by Centerview, the Proxy Statement fails to disclose: (a) Newcrest's terminal values; (b) the intrinsic value of Newcrest's Unmodelled Resources; and (c) Newcrest's estimated net debt, contingent payments and loan receivable and equity investment value.

36.     With respect to the *Newmont Life-of-Mine Discounted Cash Flow Analysis* performed by Centerview, the Proxy Statement fails to disclose: (a) Newmont's terminal values; (b) the intrinsic value of Newmont's Unmodelled Resources; and (c) Newmont's estimated net debt and equity investment value

37.     With respect to the *Newcrest Selected Public Companies Analysis*, *Newmont Selected Public Companies Analysis*, and *Selected Gold Sector Change of Control Transactions* analysis performed by Centerview, the Proxy Statement fails to disclose the respective individual multiples and financial metrics for each of the companies and transactions analyzed.

38.     With respect to the *Newcrest Life-of-Mine Discounted Cash Flow Analysis* performed by Lazard, the Proxy Statement fails to disclose: (a) Newcrest's terminal values; (b)

the intrinsic value of Newcrest's Unmodelled Resources; and (c) Newcrest's corporate costs and projected net financial debt, as of September 30, 2023.

39.     With respect to the *Newmont Life-of-Mine Discounted Cash Flow Analysis* performed by Lazard, the Proxy Statement fails to disclose: (a) Newmont's terminal values; (b) the intrinsic value of Newmont's Unmodelled Resources; and (c) Newmont's corporate costs and projected net financial debt, as of September 30, 2023.

40.     With respect to the *Newcrest Selected Public Companies Analysis*, *Newmont Selected Public Companies Analysis* and *Newcrest Selected Precedent Transactions Analysis* performed by Lazard, the Proxy Statement fails to disclose the respective individual multiples and financial metrics for each of the companies and transactions analyzed.

41.     The omission of the above-referenced information renders statements in the "Summary of Certain Newmont Financial Projections," "Opinion of BofA Securities to the Newmont Board of Directors, "Opinion of Centerview to the Newmont Board of Directors," and "Opinion of Lazard to the Newmont Board of Directors" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

42.     Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Newmont**

43.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Newmont is liable as the issuer of these statements.

45.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

46.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Share Issuance and Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

48.     The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Share Issuance and Proposed Transaction.

49.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

50.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

51.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Newmont within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Newmont and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

54.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and

exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Share Issuance and Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

55.    By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

56.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Share Issuance, the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the

Exchange Act;

        D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

        E.      Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  September 21, 2023        **LONG LAW, LLC**

        By:   */s/ Brian D. Long*
            Brian D. Long (#4347)
            3828 Kennett Pike, Suite 208
            Wilmington, DE 19807
            Telephone: (302) 729-9100
            Email: BDLong@LongLawDE.com

            *Attorneys for Plaintiff*